UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOSCO WAI-CHOY CHIU,<br><br>Plaintiff,<br><br>v.<br><br>NBS DEFAULT SERVICES, LLC, et al.,<br><br>Defendants. | Case No. 14-cv-05261-EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND; DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE**<br><br>Re: Dkt. No. 20, 29 |

Before the Court is Defendant Wells Fargo Bank's Motion to Dismiss. For the reasons stated at the March 3, 3015 hearing and in this Order, Defendant's Motion to Dismiss is granted in part and denied in part with partial leave to amend and Plaintiff's Motion to Strike is denied.

**Allegations from the complaint**

Plaintiff is the owner of the subject property located at 4670 Sequoyah Road in Oakland. Am. Compl. ¶ 3. In or around June 2006, Plaintiff contacted Defendant's predecessor, World Savings, renamed Wachovia Mortgage, to discuss refinancing his home loan. Id. ¶ 23. Plaintiff executed the refinance Loan Agreement at issue in this case in the principal amount of $565,000 on or about June 19, 2006. Id. ¶¶ 19, 25. Plaintiff alleges that he was rushed through the signing in fifteen minutes. Id. ¶ 24.

Plaintiff alleges that he was not informed that the Loan Agreement was not merely an adjustable rate loan, but rather a Pick-A-Payment loan that accrued negative amortization and caused the principal balance of the loan to grow as Plaintiff's payment did not cover the interest amount. Am. Compl. ¶ 26. Plaintiff alleges that the interest rate was adjusting almost immediately from the inception of the Loan Agreement, making the loan impossible to pay down. Id. ¶¶ 27, 28. The Loan Agreement contained complex terms, and Plaintiff alleges that a

1    reasonable consumer would not have realized that the monthly payments would "quickly grow out
2    of control." Id. ¶ 20.  Plaintiff alleges that he could not have learned of the true impact of the loan
3    terms because Defendant's predecessor's agents gave him false information so they could earn a
4    commission from closing the loan.  Id. ¶ 20.

5    English is not Plaintiff's first language and Defendant's predecessor did not make any
6    agent available who would explain the loan to Plaintiff.  Am. Compl. ¶ 21.  Plaintiff did not
7    discover the cumulative impact of the Loan Agreement's negative amortization, adjustable interest
8    rate, and principal balance cap until he received the Notice of Default shortly after August 11,
9    2011.  Id. ¶¶ 22, 30; Ex. D.  The Notice of Default and Election to Sell shows a recorded date of
10   August 11, 2011, and the Notice of Trustee's Sale shows a recorded date of February 2, 2012.
11   Am. Compl.  Ex. C, D.

12   Plaintiff attempted to apply for a loan modification several times, but Defendant never
13   initiated contact with Plaintiff to discuss loan mitigation options and told Plaintiff that he could
14   not apply for a modification.  Am. Compl. ¶ 31.  In February 2013, Plaintiff was in active loan
15   modification review with a trustee's sale on the property set for February 21, 2013.  Id. ¶ 32.
16   Plaintiff alleges that Defendant told him that the trustee's sale would go forward because
17   Plaintiff's loan modification file was not complete.  Id.  Plaintiff sent the requested documents
18   through overnight delivery, but Defendant still told Plaintiff that the trustee's sale would go ahead.
19   Id.

20   Thereafter, Plaintiff filed for bankruptcy "because Defendants refused to stop the February
21   21, 2014 trustee's sale."  Am. Compl. ¶ 33.  Plaintiff alleges that the only written notice that he
22   received of the trustee's sale was postmarked only two days before the sale.  Id.  Thus, Plaintiff
23   alleges that he did not have adequate notice of the sale and that his credit was destroyed without
24   justification.  Id.

25   Plaintiff applied for another loan modification in November 2013, but Defendant asked for
26   the same documents over and over again despite Plaintiff sending the requested document to
27   Defendant each time.  Am. Compl. ¶ 34.  Defendant denied Plaintiff's loan modification
28   application in a letter dated January 31, 2014 for insufficient income.  Id. ¶ 35.  Plaintiff alleges

1  that Defendant used the wrong income to evaluate his loan modification application and that the
2  correct amount of income would have made Plaintiff eligible for a loan modification under the
3  federal Home Affordable Modification Program ("HAMP").  Id. ¶ 35.
4        Plaintiff submitted another complete loan modification application package on October 9,
5  2014.  Am. Compl. ¶ 36.  Plaintiff alleges that Defendant acknowledged receipt of the application
6  but refuses to postpone an upcoming trustee's sale date.  Id.

**Legal Standard**

      A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

      A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.  Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

      Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id.  Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950.  That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

      A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pro. 12(f).

**Discussion**

**1.      Plaintiff's claims based on loan origination are time-barred and are dismissed**.

Plaintiff alleges violations of law for conduct relating to loan origination: fraud in loan origination (first claim), violation of California Business and Professions Code section 17200 (third claim), negligence in loan origination (sixth claim), elder abuse at loan origination (ninth claim), and reformation of fraudulent contract (eleventh claim).  The applicable statute of limitations for fraud is three years (Cal. Code of Civil P. § 338(d)), and for negligence is two years (Cal. Code of Civil P. § 339).  The statute of limitations for the section 17200 claim is four years (Cal. Bus. & Prof. Code § 17208).  Here, Plaintiff entered into the loan on June 19, 2006, yet did not file this action until over eight years later, on October 10, 2014.

Plaintiff argues that these claims are timely nonetheless due to delayed discovery.  "In order to rely on the discovery rule for delayed accrual of a cause of action, [a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 808 (2005).  In Fox, the court stated:

> We conclude that, under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action.

Fox, 35 Cal.App.4th at 803.  The delayed discovery doctrine "focuses primarily on the plaintiff's excusable ignorance of the limitations period.  [It] is not available to avoid the consequences of one's own negligence."  Lehman v. U.S., 154 F.3d 1010, 1016 (9th Cir. 1988).  "Mere conclusory assertions that delay in discovery was reasonable are insufficient and will not enable the complaint to withstand general demurrer."  CAMSI IV v. Hunter Tech. Corp., 230 Cal.App.3d 1525, 1536-37 (1991).  Further, "[t]he burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer."  E-Fab, Inc. v. Accountants, Inc. Servs., 153 Cal.App.4th 1308, 1319 (2007); Bonyadi v. Citimortgage, Inc., 2013 U.S. Dist. LEXIS 83486, at *11-12 (C.D. Cal.

1  June 10, 2013) ("As a party to a contract which she signed, plaintiff is charged with reading and
2  understanding the terms of that contract or seeking assistance if she did not, including her duty to
3  make an independent determination if her loan was affordable for her.").

4        In general with respect to these loan origination claims, Plaintiff argues that he did not
5  discover, nor could he have discovered, fraudulent concealment during loan origination until at
6  least the time of the notice of default in August 2011 because of the complex terms of the loan that
7  were not understandable to a reasonable consumer.  Am. Compl. ¶¶ 22, 26-29.  However,
8  Plaintiff's loan origination claims rest on terms of the loan that were present at the time of loan
9  origination in June 2006.  Plaintiff should have discovered his claims arising from loan origination
10  in June 2006 when he executed the loan, and Plaintiff has only provided conclusory arguments
11  about how he failed to discover the claims until more than five years later.  Plaintiff does not
12  assert any conduct by Defendant that prevented him from discovering his loan terms, or how much
13  the terms would impact future payments.  Further, Defendant notes that the language of Plaintiff's
14  Adjustable Rate Mortgage Note states that the monthly payments may not be sufficient to pay the
15  entire amount of interest.  Am. Compl. Ex. A at § 3(B).

16        Nor can Plaintiff take advantage of equitable tolling, which "must entail a false
17  representation or wrongful misleading silence."  See Schoenberg v. County of Los Angeles
18  Assess. App. Bd., 179 Cal.App.4th 1347, 1356 (2009).  Here, Plaintiff paid his mortgage for at
19  least some of the time, so he would have seen the amount increase.  Therefore, Plaintiff's loan
20  origination claims are dismissed without leave to amend as time-barred.

21  **2.     Plaintiff's second claim for fraud in loan servicing is dismissed with leave to amend.**

22        To plead a claim for fraudulent misrepresentation, Plaintiff must plead four elements: (1) a
23  knowingly false representation by Defendant; (2) an intent to deceive or induce reliance; (3)
24  justifiable reliance by Plaintiff; and (4) resulting damages.  Gutierrez v. Wells Fargo Bank, 2009
25  WL 322915, at *4 (N.D. Cal. Feb. 9, 2009) (citing Service by Medallion, Inc. v. Clorox Co., 44
26  Cal. App. 4th 1807, 1816 (1996)).  Further, Rule 9(b) requires that "[i]n all averments of fraud or
27  mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed.
28  R. Civ. P. 9(b); Vess v. Ciba-Geigy, Inc., 317 F.3d 1097, 1106 (9th Cir. 1997) ("Rule 9(b)

demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.") (internal citations omitted). In addition, when charging fraud against a business entity like Defendant, the pleading requirements are more strict:

> The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.

Tarmann v. State Farm Mutual Auto Ins. Co., 2 Cal.App.4th 153, 157 (1991). Further:

> On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme."

Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal citations omitted).

Plaintiff alleges that when he was having trouble making payments, he contacted Defendant to inquire about a loan modification. Am. Compl. ¶ 47. Plaintiff alleges that Defendant failed to contact Plaintiff about the loan modification and falsely told Plaintiff that he could not apply for a loan modification. Id. ¶¶ 48-49. Plaintiff alleges that when Defendant finally agreed to review Plaintiff for a loan modification, Defendant refused to stop the trustee's sale, thereby forcing Plaintiff to file for bankruptcy. Id. ¶ 52. Plaintiff alleges that Defendant delayed in processing his second application for a loan modification, and then denied it based on an incorrect basis. Id. ¶¶ 54-55. Thus, Plaintiff argues that he has stated a claim for fraud in loan servicing and that he cannot make any more specific allegations because the facts going to this claim are within Defendant's knowledge.

However, Defendant's statement that Plaintiff could not apply for a loan modification is belied by Plaintiff's allegations that he did apply, several times, for a loan modification. As such,

1  Plaintiff has not pled reliance for purposes of his fraud claim. Further, although Plaintiff argues
2  that Defendant used the wrong income to deny the loan modification, Plaintiff has not plausibly
3  alleged that Defendant's statement of the income number was fraudulent.
4        Plaintiff's second claim is dismissed for failure to state a claim. At the hearing, Plaintiff
5  sought to amend the complaint to add allegations of recent allegedly fraudulent statements relating
6  to his most recent loan modification application. Leave to amend is granted as to the new
7  allegations only, not as to the prior applications.

**3.     Plaintiff has stated a claim for violation of California Civil Code section 2923.5.**

California Civil Code section 2923.5 "concerns the crucial first step in the foreclosure process: The recording of a notice of default as required by section 2924." Mabry v. Superior Court, 185 Cal. App. 4th 208, 221 (2010). Under section 2923.5, a lender may not file a notice of default until thirty days after it has contacted "the borrower by phone or in person to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'" Id. (quoting Cal. Civ. Code § 2923.5(a)(2)). "If section 2923.5 is not complied with, then there is no valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed." Id. at 223. The remedy for a failure to comply with section 2923.5 is "to postpone the sale until there has been compliance with" the statute. Id. (citing Cal. Civ. Code § 2924g(c)(1)(A)).

Courts have held that § 2923.5(a) does not require actual contact with the borrower, but rather that the mortgagee or beneficiary has satisfied the due diligence requirement of section 2923.5(e). See Argueta v. J.P. Morgan Chase, 787 F.Supp.2d 1099, 1107 (E.D.Cal.2011). A mortgagee or beneficiary has satisfied the due diligence requirement if it was not able to contact the borrower after (1) mailing a letter containing certain information, including the number to locate a HUD certified counseling agency; (2) then calling the borrower "by telephone at least three times at different hours and on different days"; (3) mailing a certified letter, with return receipt requested, if the borrower does not call back within two weeks; (4) providing a telephone number to a live representative during business hours; and (5) posting a link on the homepage of its Internet Web site with certain information. Cal. Civ. Code § 2923.5(e).

Plaintiff argues that Defendant did not contact Plaintiff in a meaningful way and alleges

7

1    that Defendant only attempted to deter Plaintiff from filing a loan modification application.  Am.

2    Compl. ¶¶ 31-36.  Further, Plaintiff alleges that Defendant did not initiate contact with Plaintiff,

3    and failed, among other things, to send Plaintiff a letter as required by section 2923.5.  Am.

4    Compl. ¶¶ 90-93.  Thus, Plaintiff has alleged sufficient facts to state this claim, and Defendant's

5    motion to dismiss is denied.

**4.     Plaintiff's claim for violation of California Civil Code section 2923.6 is dismissed with leave to amend.**

At the hearing, Plaintiff stated that he was pursuing this claim only as to the current loan modification application.  Therefore, as with Plaintiff's claim for fraud in loan servicing, Plaintiff's claim based on section 2923.6 is dismissed with leave to amend to add allegations relating to the current loan modification application only.

**5.     Plaintiff has stated a claim for negligence in loan servicing.**

Under California law, the elements of a claim for negligence are "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." Ladd v. County of San Mateo, 12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309, 911 P.2d 496 (1996) (internal citations and quotations omitted); see also Cal Civ Code § 1714(a).  In general, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Savs. & Loan Ass'n, 231 Cal.App.3d 1089, 1096 (1991). "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" Id. (internal citation omitted).  In Nymark, the court held a lender owed no duty of care to a borrower in preparing an appraisal of the real property security for the loan when the purpose of the appraisal is to protect the lender by satisfying it that the collateral provided adequate security for the loan.  The court reached this holding by considering the six factors identified in Biakanja v. Irving, 49 Cal.2d 647, 649-50 (1958) to determine whether to recognize a duty of care: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection

between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. Id. at 1092.

There is a split of authority in California state courts as to whether a lender owes a duty of care in processing a loan modification application. The California Court of Appeal held that there is no such duty in Lueras v. BAC Home Loans Servicing, 221 Cal.App.4th 49, 67 (2013) ("We conclude a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money. . . . The Biakanja factors do not support imposition of a common law duty to offer or approve a loan modification."). More recently, however, the appellate court found that there was a duty of care in processing a loan modification application. See Alvarez v. BAC Home Loans Servicing, 228 Cal.App.4th 941, 948 (2014) ("Here, because defendants allegedly agreed to consider modification of the plaintiffs' loans, the Biakanja factors clearly weigh in favor of a duty."). The Alvarez court reasoned:

> The transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants. Plaintiffs allege that the mishandling of their applications "caus[ed] them to lose title to their home, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure, and other damages." As stated in Garcia, "Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief." (Garcia, supra, 2010 WL 1881098, p. *3, 2010 U.S. Dist. Lexis 45375, p. *9.) Should plaintiffs fail to prove that they would have obtained a loan modification absent defendants' negligence, damages will be affected accordingly, but not necessarily eliminated.
>
> With respect to whether defendants' conduct was blameworthy—the fifth Biakanja factor—it is highly relevant that the borrowers "ability to protect his own interests in the loan modification process [is] practically nil" and the bank holds "all the cards." (Jolley, supra, 213 Cal.App.4th at p. 900, 153 Cal.Rptr.3d 546.) . . . .
>
> The borrower's lack of bargaining power coupled with conflicts of interest that exist in the modern loan servicing industry provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification. . . .
>
> The policy of preventing future harm also strongly favors imposing a duty of care on defendants. As noted in Jolley, supra, 213

9

> Cal.App.4th at page 903, 153 Cal.Rptr.3d 546, "[T]he California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost." . . . .

Alvarez, 228 Cal.App.4th at 948-49.  The Court will follow the more recent case, Alvarez.

Here, Plaintiff alleges, among other things, that during the loan modification process, Defendant made material misrepresentations about Plaintiff's income in a loan modification denial letter, misrepresented to Plaintiff that he could not apply for a loan modification and misrepresented to Plaintiff that Defendant could not postpone a trustee's sale.  Am. Compl. ¶ 116. The Biajanka factors, as analyzed by Alvarez, support finding that Plaintiff has alleged a duty of care.  First, the transaction would have been intended to affect Plaintiff by reducing the mortgage payments.  The potential harm to Plaintiff from mishandling the application processing was readily foreseeable: the loss of an opportunity to keep the home would be the inevitable outcome. There was no guarantee the modification would be granted had the loan been properly processed, but the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief.  There is a close connection between Defendant's conduct and any injury actually suffered, because, to the extent that Plaintiff otherwise qualified and would have been granted a modification, Defendant's conduct in making misrepresentations about the process precluded the loan modification application from being timely processed.  Whether or not moral blame attaches to this Defendant's specific conduct and whether or not Plaintiff has suffered a certain injury are not clear at this stage of the proceedings.  Thus, Plaintiff has adequately alleged a negligence claim.

**6.    Plaintiff's claim for violation of the Fair Debt Collection Practices Act is dismissed without leave to amend.**

Plaintiff alleges that under the Fair Debt Collection Practices Act, a borrower may send their trustee company a validation of debt for information related to the servicing of the borrower's loan and to suspend collection activity including foreclosure until the debt has been legally verified.  Am. Compl. ¶ 123; 15 U.S.C. § 1692g.  The statute states:

> (a) Notice of debt; contents
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the

> initial communication or the consumer has paid the debt, send the consumer a written notice containing--
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
> (b) Disputed debts
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(a), (b). Plaintiff alleges that he sent a validation of debt to Defendant NBS Default Services, Defendant's agent, on February 10, 2014 and received confirmation that NBS Default Services received the document. Am. Compl. ¶ 124. Plaintiff sent a second validation of debt on February 17, 2014. Am. Compl. ¶ 125. NBS Default Services failed to provide the documents requested by Plaintiff within 30 days of receipt of the validation of debt and did not suspend collection activities as required by statute. Am. Compl. ¶ 126.

This claim fails because Defendant is not a debt collector under the statute. See Ligon v. JP Morgan Chase, 2011 U.S. Lexis 68840, at *10 (N.D. Cal. June 27, 2011) (". . . because foreclosure is not a debt collection practice under the FDCPA, Plaintiffs cannot state a claim under

11

the FDCPA as a matter of law."); Nera v. Am. Home Mortgage Servicing, 2009 WL 2423109, at *4 (N.D. Cal. Aug. 5, 2009); Pratap v. Wells Fargo Bank, ___ F. Supp. 2d ___, 2014 WL 3884413 (N.D. Cal. Aug. 7, 2014); Jelsing v. MIT Lending, 2010 U.S. Dist. LEXIS 68515, *14, 15 (S.D. Cal. July 9, 2010) ("Wells Fargo is a mortgage servicer, and '[a] mortgage servicing company if not a debt collector within the meaning of the FDCPA."). Thus, Plaintiff's claim based on the Fair Debt Collection Practices Act is dismissed without leave to amend.

**7. Plaintiff's elder abuse claim is not dismissed to the extent that it is based on conduct during loan servicing.**

Plaintiff alleges that he has been over the age of 65 at all relevant times, and that Defendant coerced him into executing a predatory loan agreement. Am. Compl. ¶¶ 135, 139. Plaintiff alleges that Defendant misinformed Plaintiff that he could not apply for a loan modification and instead attempted to wrongfully foreclose on Plaintiff's property while Plaintiff had an active loan modification application. Am. Compl. ¶ 136.

California's financial elder abuse statute states:

> (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.
> (b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.
> (c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

Cal. Welf. & Inst. Code § 15610.30. However, allegations that a lender placed an elder in a predatory loan are likely not enough to support a claim for elder abuse. See, e.g., Kouretas v.

12

1  Nationstar Mortg. Holdings, 2014 U.S. Dist. LEXIS 115647, at *14-15 (E.D. Cal. Aug. 19, 2014)
2  ("Plaintiff's allegations that '[D]efendants worked together to provide [Plaintiff] with multiple
3  points of contact and with divergent and confusing written representations,' along with the
4  remaining allegations in Plaintiff's FAC, are insufficient to state a claim upon which relief can be
5  granted under the Elder Abuse Act, as there is simply no allegation that Plaintiff has been deprived
6  of any real or personal property."); Nevis v. Wells Fargo Bank, 2007 U.S. Dist. LEXIS 65932, at
7  *10-11 (N.D. Cal. May 26, 2007) (allegations that the bank placed the plaintiff in a "detrimental
8  loan" not enough to state a claim for elder abuse).

Here, Plaintiff has alleged more than just that Defendant coerced him into a predatory loan. Plaintiff alleges, among other things, that Defendant violated the statute by refusing to postpone the foreclosure sale, thereby forcing Plaintiff to file for bankruptcy, and that Defendant wrongfully failed to timely and accurately review Plaintiff's loan modification application. Am. Compl. ¶¶ 136, 142. However, to the extent that Plaintiff's claim is based on Defendant's allegedly wrongful acts related to the foreclosure process, those acts are subject to a qualified privilege absent allegations of malice. See Consumer Solutions REO v. Hillery, 658 F. Supp. 2d 1002 (N.D. Cal. 2009) (a qualified privilege applies to preclude elder abuse claim arising from nonjudicial foreclosure conduct so long as its conduct was not malicious). Here, Plaintiff has not alleged that Defendant acted with malice. Therefore, Plaintiff's claim for elder abuse in loan servicing (but not as to loan origination) is dismissed with leave to amend as to whether Defendant acted with malice.

**8.     Plaintiff's claim for unjust enrichment is dismissed without leave to amend.**

The elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another. Peterson v. Cellco P'ship, 164 Cal.App.4th 1583, 1593 (2008). Plaintiff alleges that by their wrongful acts and omissions, Defendants have been unjustly enriched at the expense of Plaintiff because if Defendant forecloses on the property, it will be unjustly enriched because Defendant obtained insurance on Plaintiff's loan that will compensate it in the event of a default. Am. Compl. ¶¶ 147-149. Plaintiff's allegations are conclusory and speculative as to how Defendant received an unjust benefit from Plaintiff. Thus, Plaintiff's unjust

13

enrichment claim is dismissed without leave to amend.

**9.     Plaintiff's equitable claims for reformation and restitution, quiet title and declaratory relief are dismissed without leave to amend.**

Under California law, "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 117 (1971); Odinma v. Aurora Loan Servs., 2010 WL 2232169, at *5 (N.D. Cal. June 3, 2010) ("'The rules which govern tenders are strict and are strictly applied.'" (quoting Nguyen v. Calhoun, 105 Cal. App. 4th 428, 439 (2003))); see also Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). California district courts follow Karlsen in examining wrongful foreclosure claims. Anaya v. Advisors Lending Group, 2009 WL 2424037, at *10 (E.D. Cal. Aug. 3, 2009) ("Plaintiff offers nothing to indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 WL 1813973, at * 11-12 (N.D. Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999).

Here, Plaintiff's equitable claims are dismissed because Plaintiff has failed to allege tender of the outstanding amount due on the loan. Further, Plaintiff's declaratory relief claim is dismissed because it is not a claim, but a remedy. See Bridgeman v. United States of America, 2011 U.S. Dist. LEXIS 6059, at *559-60 (E.D. Cal. Jan. 11 2011) ("As an initial matter, injunctive

14

relief is a remedy that derives from the underlying claims, not an independent claim."). Plaintiff's equitable claims are dismissed without leave to amend.

**10.      Plaintiff's Motion to Strike is denied as moot.**

On February 11, 2015, Plaintiff filed a motion to strike Defendant NBS Default Services' joinder in Defendant's Motion to Dismiss. At the hearing, Plaintiff and NBS Default Services stipulated that NBS would be bound by any non-monetary judgment in this case and would have no further role in this case. The Court ordered the parties' stipulation. Therefore, Plaintiff's Motion to Strike is denied as moot.

**Conclusion**

As stated above, Defendant's Motion to Dismiss is granted in part and denied in part with partial leave to amend. Any amended complaint shall be filed no later than April 2, 2015. Plaintiff's Motion to Strike is denied as moot.

**IT IS SO ORDERED.**

Dated:  March 17, 2015

_____
Elizabeth D. Laporte
United States Magistrate Judge